**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIAM WIMBLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. CIV-25-078-JFH-GLJ** |
| | ) | |
| **MCCURTAIN COUNTY JAIL TRUST, BOARD OF COUNTY COMMISSIONERS FOR MCCURTAIN COUNTY, TURN KEY HEALTH CLINICS, LLC,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel Discovery. *See* Docket No. 64. Plaintiff brings this case for injuries suffered due to lack of adequate medical treatment while he was detained in the McCurtain County Jail. On April 30, 2025, the Court referred is case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. *See* Docket No. 22. For the reasons stated below, the Plaintiff's Motion to Compel Discovery [Docket No. 64] is GRANTED IN PART and DENIED IN PART.

**Procedural Background**

Plaintiff moves to compel responses to Interrogatory No. 3 and Request for Production No. 5. The disputed interrogatory provides:

> INTERROGATORY NO. 3: Please identify ALL TURN KEY employees, agents, or contractors who conducted any audits and/or on-site visits of the JAIL between January 1, 2018 and present, along with the date(s) they conducted said audit/on-site visit.

Docket No. 64, Ex. 2. Turn Key responded:

> ANSWER TO INTERROGATORY NO. 3: Objection. This Interrogatory is overly broad, not properly limited in time or scope, not proportional to the needs of the case, harassing, annoying, impossible to answer, and not reasonably calculated to lead to the discovery of admissible evidence. As worded, Plaintiff's Interrogatory would require Defendant to determine each and every employee, agent, and/or contractor of TK Health that ever visited the McCurtain County Jail. Such a request is unreasonably overbroad and burdensome, and beyond the scope of discovery in the present matter. Moreover, Defendant objects to the discovery of any audits and/or "on-site visits" which occurred after April 30, 2023, the date in which Plaintiff was allegedly release on an "own recognizance bond" from the McCurtain County Jail. Subject to and without waiving said objections, and as Defendant understands and interprets this Interrogatory, Defendant is currently in the process of obtaining any responsive, non-privileged information and will supplement when and if such information becomes available.

*Id*. To date, Turn Key has not supplemented or otherwise provided any information responsive to Interrogatory No. 3. Docket No. 64, p. 2. The disputed document request provides:

> REQUEST FOR PRODUCTION NO. 5: Please produce ALL internal written audits, draft audits, reports (INCLUDING Performance Reviews, incident reports, AND other investigative reports), draft reports, reviews OR studies, INCLUDING supporting documents, attachments AND exhibits, from January 2017 to the present, that were conducted, created, or commissioned by TURN KEY, including any of its agents, employees, or contractors, OR the SHERIFF'S OFFICE/COUNTY, RELATING TO:
>
> a. Mr. Wimbley;
>
> b. The adequacy OR timeliness of medical OR mental health assessments, evaluations, OR treatment provided at JAIL;

c. Supervision of JAIL inmates with serious, significant OR complex medical OR mental health needs;

d. Supervision of medical OR nursing staff at the JAIL;

e. Supervision of non-medical staff at the JAIL;

f. Deaths of inmates at the JAIL;

g. The adequacy of medical OR mental health care training provided to JAIL personnel OR contractors; OR

h. The adequacy of staffing (both staffing of medical personnel and JAIL personnel) at the JAIL.

Docket No. 64, Ex. 2. Turn Key responded, "*See* Answer to Interrogatory No. 3." *Id*. On August 31, 2026, Turn Key served its Second Supplemental Answers and Responses to Plaintiff's First Set of Discovery Requests in which it stated, "[w]ithout waiving prior objections, Defendant would state that after a diligent search it was unable to locate any materials that were responsive to this request for the time period of September 16, 2022 to April 30, 2023." *Id*., p. 4.[1]

**Analysis**

## I. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

[1] Although the Motion cites to Ex. 4, Turn Key's Second Supplemental Answers and Responses to Plaintiff's First Set of Discovery Requests is not attached to his motion. *See* Docket No. 64. Because Turn Key does not dispute Plaintiff's statement regarding its second supplemental response, the undersigned presumes it to be accurate for purpose of this Order.

> and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26(b)(1) is broad, but it "is not without limits and the trial court is given wide discretion in balancing the needs and rights" of the parties. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation marks omitted). Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Considerations of both relevance and proportionality expressly govern the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 Amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment).

The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360 (D. N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the

burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been"). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule] 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006); *see also Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper).

**II. Motion to Compel**

**A. Interrogatory No. 3**

Turn Key's objection to Interrogatory No. 3 has two central thrusts. First, the breadth of the interrogatory, at least as interpreted by Turn Key. Second, the time extending beyond when Plaintiff was released from the McCurtain County Jail. The undersigned addresses each in turn.

Plaintiff argues that identifying who conducted any audits of the McCurtain County Jail is relevant to his claims. Amity Williams, Turn Key's Regional Nurse Manager beginning in October 2022, testified that she along with Tara Adams, Associate Regional Manager, performed quarterly audits of the jails in all 14 counties in her region, including the McCurtain County Jail. *See* Docket No. 64, Ex. 3 at p. 19, lns. 4-7; p. 23, ln. 15 - p. 24, ln. 10; p. 25, lns. 6-12. Ms. Williams further testified that these audits were to ensure

Turn Key's nurses were complying with Turn Key policies and protocols, and that the audits varied each quarter, covering different issues such as intake, sick calls, etc. *Id*. at p. 23, lns. 1-19; p. 25, lns. 13-21; p. 34, lns. 12-19. Each audit generated a written report that was sent to Kara Black in Turn Key's corporate office. *Id*. at p. 27, lns. 14-20.[2] Thus, the audits and who performed them appear relevant as they are Turn Key's own evaluation of its employees' compliance with its policies and procedures at the McCurtain County Jail and Turn Key bears the burden of establishing the lack of relevance or proportionality.

Turn Key's breadth objection focuses on requesting the identity of all Turn Key employees who performed "on-site visits" to the jail in addition to those employees performing audits of the jail. Turn Key asserts this interrogatory, as interpreted, is "overly broad" and "impossible to answer" because it would require it to identify every employee who visited the McCurtain County Jail during the covered period. As an initial matter, while the interrogatory is not a model of clarity, Turn Key interprets the interrogatory in the broadest possible terms when "on-site visits" could be reasonably interpreted to mean only those who visited the jail to conduct the audits. Nonetheless, Turn Key does not show that even its broad interpretation to be impossible to comply with because it presumably maintains records identifying which employees visit a particular jail on a particular date. Turn Key does not state how many potential employees might be at issue and offers nothing further to substantiate its claim that providing such information is unduly burdensome or disproportionate to Plaintiff's claims, particularly as to the time when Plaintiff was in

[2] Some of the pages of Ms. Williams' deposition referenced in the Motion were not included in Exhibit 3 and are therefore not discussed herein.

custody. While Turn Key notes the six factors for determining proportionality in Fed. R. Civ. P. 26(b)(1), it fails to sufficiently support them. For example, audits of compliance with policies and procedures or efforts to do so are important to the issues in Plaintiff's claim, there is evidence the audits are in its possession, and Turn Key fails to set forth any evidence that it is burdensome or expensive to identify who conducted the audits.

Furthermore, any objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Turn Key's answer ignores the admonition that it is "the duty of the responding party to provide full answers to the extent not objectionable." Fed. R. Civ. P. 33(b) advisory committee's note to 1993 Amendment. As a result, Turn Key is obligated to respond to the unobjectionable portion of Interrogatory No. 3. Turn Key does not object to identifying any person performing an *audit* as unduly burdensome or otherwise objectionable, only to identifying every employee that visited the jail. Indeed, Turn Key intimates this by answering that it is in the process of locating the information and will provide it when it is available. *See* Docket No, 64, Ex. 2. Turn Key, however, never did so as to those who conducted audits during any period.

Second, Turn Key takes issue providing any information before September 16, 2022, when it became the contracted medical care provider for the McCurtain County Jail, and after Plaintiff was released from custody on April 30, 2023. Obviously, if Turn Key has no responsive information before it began providing medical services on September 16, 2022, it could and should simply say so in its answer. *See*, *e.g.*, *XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171, at *22 (D.N.M. Apr. 1, 2016) "[Fed. R. Civ. P.] 33 requires a party to respond to interrogatories only with information that is available to them"). Turn

Key does not, however, offer any support for its objection that any audit performed after Plaintiff's release from custody is irrelevant. By design, audits are backward looking. Thus, audits performed after Plaintiff's release likely concern performance issues occurring during the time when Plaintiff was in custody. Particularly where, as here, each quarterly audit appears to cover a limited distinct issue such as intake one quarter, sick calls, etc. in another quarter. As described by Ms. Williams, it could take a series of audits over a year or more to cover all the relevant specific matters being audited. Moreover, audits after Plaintiff's release may reveal corrective action plans or recurring issues or problems previously identified that have not been corrected. All such information could be relevant to Plaintiff's claims. Additionally, Turn Key is no stranger to such post-incident discovery. *See*, e.g., *Bonilla v. Gerlach*, 2024 WL 4497114, at *3 (W.D. Okla. Oct. 15, 2024) ("Contrary to Turn Key's argument, in some situations, post-incident conduct may be probative of the municipal entity's deliberate indifference or other relevant issues"). Thus, the objection is overruled in part and Turn Key is ordered to supplement its answer to Interrogatory No 3 identifying all employees, agents, or contractors who conducted any audit of the McCurtain County Jail from September 16, 2022 to the present, and any Turn Key employees who visited the jail between September 16, 2022 and April 30, 2023.

**B. Request for Production No. 5**

The disputed document request seeks, *inter alia*, all audits including drafts and supporting documents. Turn Key simply incorporates its response, presumably including its objections, in its answer to Interrogatory No. 3. As an initial matter, such incorporation by reference is confusing and ineffective as a significant portion of Turn Key's objections

in Interrogatory No. 3 focuses on the "and/or on-site visits of the JAIL" language that is not present in the document request. Therefore, the undersigned presumes Turn Key's only objection to the document request is the date range.

As to the request's application to matters prior to September 16, 2022, it is well-settled that a responding party's obligations under Fed. R. Civ. P. 34 do not extend to non-existent materials. *See*, *e.g.*, *Thompson v. Lantz*, 2009 WL3157561, at *1 (D. Conn. Sept. 25, 2009) ("[A] party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."). The same cannot be said of the McCurtain County Jail audits after September 16, 2022. Ms. Williams testified that starting in October 2022 she conducted audits of the McCurtain County Jail each quarter for compliance issues, created written audit reports and provided those written audits to Kara Black in Turn Key's corporate office. Thus, there is evidence that audit reports were created, are relevant and should exist.

Turn Key's invocation of its prior objections in its second supplemental response that it found no responsive documents after a diligent search leaves multiple questions unanswered. First, Turn Key fails to comply with Fed. R. Civ. P. 34(b)(2)(C), stating whether any responsive materials were withheld based on its objections. This is no mere technicality as it leaves both Plaintiff and the Court unsure whether responsive documents do not exist or are being withheld based on some objection. Second, as noted above, audits performed after Plaintiff's release from custody are relevant for discovery purposes. Turn Key's attempt to waive off Ms. Williams' testimony is unpersuasive as she testified clearly

that she conducted audits during the requested period and copies were provided to the corporate office.

Finally, Turn Key now argues that the request is overly broad because it includes audits of issues, such as mental health or jail deaths, that are irrelevant to Plaintiff's claims. While Turn Key did not assert this objection in its initial discovery response or second supplemental response, the requests for documents in Request No. 5 subparts (b), (f) and (g) related to mental health or deaths are not relevant or proportional to Plaintiff's claim. Plaintiff's remaining claim does not raise any issue related to his mental health treatment and he did not die while in custody. Therefore, Turn Key's objection is overruled in part and Turn Key is ordered to produce the requested audits and related documents with the exception of any audit or document exclusively related to mental health issues or jail deaths from September 16, 2022 to the present. To the extent Turn Key states it has no responsive documents, then it is to verify under oath the details of its search for responsive documents, including: a description of where any jail audits and related documents are maintained; how such records are kept in the ordinary course of business; how the search for responsive documents was conducted, including any database searched and the search terms used; and the period for which responsive records were searched.

**III. Plaintiff's Reasonable Expenses**

Plaintiff seeks to recover his reasonable expenses incurred in filing the motion to compel. *See* Docket No. 64, pp. 11-12. Rule 37(a)(5) provides that if a party's motion to compel is granted, the court "must" "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the

movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(1)(A). The court may not order such payment if certain conditions are met, including that "other circumstances make an award of expenses unjust." *Id*. at Rule 37(a)(5)(A)(iii). Where, as here, a motion to compel discovery is partially granted, the Court has discretion to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); *see also Linnebur v. United Tel. Ass'n*, 2012 WL 1183073, at *1 (D. Kan. Apr. 9, 2012) ("when the court overrules many of the resisting party's objections, a significant number of which are not substantially justified, an award of some fees and expenses may be appropriate"). In general, an award of expenses is not appropriate if "(i) the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action; (ii) the opposing party's . . . response[ ] or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Although the undersigned is not granting Plaintiff's motion in its entirety, it is substantially granting it. Furthermore, Turn Key's failure to timely supplement or comply with its obligations under Rules 33 and 34 were significant factors in causing the discovery dispute and necessitating the motion. Specifically, as noted above, Turn Key failed to answer that portion of Interrogatory No. 3 that was not objectionable and did not state whether it was withholding any otherwise response documents based on its objection in Request No. 5. Therefore, the undersigned finds that assessing Turn Key Plaintiff's reasonable costs, including attorneys' fees, of filing the motion to compel is warranted. Plaintiff may submit by application a request for his reasonable attorneys' fees incurred in drafting and filing the motion to compel but may not seek to recover any costs otherwise

associated with the underlying discovery dispute or costs associated with complying with LCvR 7.1(f).

**Conclusion**

Accordingly, Plaintiff's Motion to Compel Discovery [Docket No. 64] is GRANTED IN PART and DENIED IN PART and Turn Key is ordered to supplement its discovery responses consistent with this Order within 14 days. It is further ordered that Plaintiff must submit his application for reasonable attorneys' fees and costs incurred in filing the motion to compel within 14 days of this Order.

IT IS SO ORDERED this 7th day of October 2026.



**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**